DECISION
{¶ 1} Relator, Judy Lynch, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order setting relator's average weekly wage ("AWW") at $94.11, and ordering the commission to find that special circumstances exist warranting a finding that her AWW should be set at a higher rate.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate found that the commission did not abuse its discretion by omitting relator's period of unemployment in its entirety from the AWW calculation. However, the magistrate concluded that the commission's order misstated the facts in finding that special circumstances did not exist based upon a perceived lack of any evidence, apart from relator's own hearing testimony, as to her prior earnings from a previous job. The magistrate therefore recommended that this court grant a "limited writ," ordering the commission to determine whether or not relator's prior earnings should be considered special circumstances warranting the use of an alternate method to calculate her AWW.
 {¶ 3} Respondent, Giant Eagle, Inc., and the commission (collectively "respondents") have filed objections to the magistrate's decision. Respondents challenge the magistrate's determination that the commission's order, finding relator submitted "no documentation" to support her contention she made approximately $23,000 per year in a previous job held for three years before being laid off, misstated the evidence presented and constituted an abuse of discretion. On this point, the magistrate noted that relator had submitted a W-2 earnings summary indicating she earned $13,754.83 in 2001; the magistrate thus concluded there was some evidence, apart from relator's testimony, regarding her earnings prior to her period of unemployment.
 {¶ 4} Respondents, noting that the W-2 earnings summary was part of the stipulated evidence, and that the commission's order indicates all evidence in the claim file was reviewed, maintain that the commission's finding of "no documentation" does not mean the commission was unaware of, or gave no consideration to, the W-2 form. Rather, respondents argue, the commission merely found that, while relator may have submitted evidence concerning six months of employment, there was no documentation to establish 36 months of employment.
 {¶ 5} Upon review, we agree with respondents' contention that a reasonable interpretation of the commission's order is that, despite evidence of wages for the first six months of 2001, there was no documentation as to the 30-month period prior to that time, and, therefore, the W-2 submitted by relator did not establish 36 months of employment. Further, we do not find that the commission was required to extrapolate three years of employment (at $23,000 per year) based upon data covering only six months, and we conclude the commission did not abuse its discretion in failing to find the existence of special circumstances to warrant a departure from the standard calculation set forth in R.C. 4123.61.
 {¶ 6} Upon examination of the magistrate's decision, and an independent review of the evidence, this court adopts the magistrate's findings of fact and conclusions of law to the extent the magistrate determined that the commission did not abuse its discretion by omitting relator's period of unemployment in its entirety. However, this court rejects the magistrate's recommendation that this court issue a limited writ of mandamus based upon a finding that the commission misstated the evidence. We therefore sustain respondents' objections and deny the requested writ of mandamus.
Objections sustained; writ denied.
Klatt, P.J., and Travis, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
The State of Ohio on Relation : of Judy Lynch, : :
Relator, : :
v. : No. 05AP-864 :
Giant Eagle, Inc. and : (REGULAR CALENDAR) The Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on February 22, 2006 Shapiro, Marnecheck Riemer, Matthew A. Palnik and JenniferL. Wilson, for relator.
Rademaker, Matty, McClelland Greve, and Kirk R.Henrikson, for respondent Giant Eagle, Inc.
Jim Petro, Attorney General, and Kevin J. Reis, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 7} Relator, Judy Lynch, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which set relator's average weekly wage ("AWW") at $94.11 and ordering the commission to find that special circumstances exist warranting a finding that her AWW should be set at a higher rate.
Findings of Fact:
 {¶ 8} 1. Relator sustained a work-related injury on July 25, 2002, and her claim has been allowed for "cervical sprain, left shoulder sprain, left wrist sprain, left knee contusion/sprain, left hip sprain; aggravation of pre-existing degenerative left shoulder, left knee and lumbar spine."
 {¶ 9} 2. At the time of her injury, relator had been employed with Giant Eagle, Inc. ("employer"), for approximately six months and had been working on a part-time basis.
 {¶ 10} 3. On February 14, 2003, relator filed a motion requesting that her AWW be set at $361.65. In support of her motion, relator attached the following affidavit:
Judy Lynch, being first duly sworn, deposes and states that the following are her wages received for the period of January 1, 2001 through July 25, 2002, which are verified by the attached W-2 forms, Unemployment Data Sheets and Employee Earnings History from Giant Eagle, Inc.
From January 1, 2001 through December 31, 2001, I received a total $23,309.83.
From January 1, 2002 through February 13, 2002, I was unemployed and without any earnings and/or income despite my efforts to find employment.
On or about February 14, 2002, I began my employment with Giant Eagle, Inc. and for the period of February 14, 2002 through July 25, 2002, I earned a total of $2,042.52. In addition to my earnings from Giant Eagle, I received $2,182.59 from the Ohio Department of Job and Family Services as a supplement for the wage loss I sustained while employed by Giant Eagle.
Therefore, please set my AWW at $361.65 based upon my 76 weeks of employment for the above period.
 {¶ 11} 4. Relator submitted a W-2 for the year 2001 showing wages of $13,754.83
 {¶ 12} 5. Relator's motion was heard before a district hearing officer ("DHO") on April 30, 2003, and resulted in an order setting her AWW at $333.58 based upon wages of $25,352.35 divided by 76 weeks. Both relator and the employer appealed and the matter was heard before a staff hearing officer ("SHO") on June 30, 2003, and resulted in an order affirming the prior DHO's order. The employer's request for reconsideration was denied by order of the commission mailed November 14, 2003.
 {¶ 13} 6. The employer filed a mandamus action in this court asserting that the commission abused its discretion by setting relator's AWW on the basis of 76 weeks of employment which included approximately $10,000 in unemployment compensation which relator received in 2001. This court adopted the decision of the magistrate and granted a writ of mandamus ordering the commission to vacate its award and to issue a new order determining relator's AWW, pursuant to R.C. 4123.61, and requiring the commission to provide a reasonable explanation for that decision. After noting that the commission appeared to have applied the "special circumstances" found in R.C. 4123.61, the court found that the commission had failed to explain the justification for its decision. State ex rel. Giant Eagle, Inc. v. Indus. Comm.,
Franklin App. No. 04AP-253, 2004-Ohio-7199.
 {¶ 14} 7. By order of the commission mailed March 8, 2005, the commission vacated its prior order and set the matter for de novo determination before an SHO to determine relator's AWW and provide a reasonable explanation for the decision.
 {¶ 15} 8. Thereafter, the matter was heard before an SHO on April 14, 2005. The SHO granted relator's request to set her AWW at $333.58 based on wages of $25,352.35 divided by 76 weeks and specifically excluded the weeks of unemployment from the calculation. The SHO indicated that the order was based upon relator's 2001 and 2002 wages.
 {¶ 16} 9. The employer appealed and the matter was heard before the commission on July 7, 2005. In an order mailed July 29, 2005, the commission set relator's AWW at $94.11 based upon R.C. 4123.61. The commission further explained its decision setting relator's AWW at $94.11 as follows:
It is the specific finding of the Commission that the average weekly wage is set at $94.11 based on the provisions of R.C.4123.61. The C-94-A affidavit signed by the injured worker on 02/14/2003, the completed W-2 forms on file, the 1/22/2003 completed questionnaire from Ohio Job and Family Services and the print-out from the payroll records of the instant employer indicate that the injured worker earned $2,042.52 for working 23 weeks of the 52 week period immediately preceding the date of injury. The evidence also indicates that the injured worker was employed for one week in December, 2001 for Don Jordon Chrysler/Plymouth, and earned $216.00 in wages. The average weekly wage is calculated by adding the wages for these two employment periods together ($2,258.52) and dividing by 24 weeks. The remaining 28 weeks are excluded from the calculation because the injured worker was unemployed and receiving unemployment compensation benefits from Ohio Depart-ment of Job and Family Services during that time.
It is further the finding of the Commission that the pay-ments/benefits received by the injured worker in unemploy-ment compensation over the 52-week period from the Ohio Department of Job and Family Services, is not included in the above calculation. It is the finding of the Commission that unemployment compensation does not constitute wages to be considered in determining the average weekly wage under R.C.4123.61.
The Commission also finds that special circumstances have not been sufficiently shown to support a departure from the standard calculation contained in R.C. 4123.61. Although the injured worker argued at hearing that she worked full-time most of her work life, most recently for three years prior to being laid off in June, 2001, and that she made approx-imately $23,000.00 per year in this previous job, no documentation of wages has been submitted to support this contention. Therefore, the Commission rejects the applica-tion of special circumstances in this case.
 {¶ 17} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 18} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 19} R.C. 4123.61 provides for the computation of the AWW and states, in pertinent part:
The average weekly wage of an injured employee at the time of the injury or at the time disability due to the occupational disease begins is the basis upon which to compute benefits.
* * *
In death, permanent total disability, permanent partial disability claims, and impairment of earnings claims, the claimant's or the decedent's average weekly wage for the year preceding the injury or the date the disability due to the occupational disease begins is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, or the date the disability due to the occupational disease begins any period of unemployment due to sickness, industrial depress-ion, strike, lockout, or other cause beyond the employee's control shall be eliminated.
In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' com-pensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants.
 {¶ 20} As above indicated, a claimant's AWW is ordinarily calculated based upon the claimant's wages for the year preceding the injury. Any period of unemployment beyond the claimant's control is to be eliminated from the calculation. Further, the commission has discretion to determine that "special circumstances" exist which justify applying a different method to calculate a claimant's AWW in order to do substantial justice to the claimant.
 {¶ 21} In this mandamus action, relator contends that the commission abused its discretion by not finding that "special circumstances" exist warranting the use of a different method of calculating her AWW. Relator argues that her part-time employment with the employer and her period of unemployment both constitute "special circumstances" under R.C. 4123.61 and require the commission to utilize a different method for calculating her AWW. For the following reasons, this magistrate disagrees.
 {¶ 22} First, relative to relator's argument that the commission did not consider her period of unemployment to be a "special circumstance," the magistrate notes that the commission specifically excluded from consideration relator's weeks of unemploy-ment. R.C. 4123.61 specifically requires that the commission exclude from con-sideration any weeks of unemployment which were beyond relator's control. The unemployment itself does not constitute a "special circumstance"; instead, the commission is automatically required to exclude it. In the present case, the commission did exclude it from its consideration. The period of unemployment is not held against a claimant. In this case, the relator wants the period of unemployment included because she wants the commission to be required to consider the unemployment compensation she received as wages. This magistrate finds that there is no precedent requiring, or even permitting, the commission to find that unemployment compensation paid to a claimant is synonymous with wages for purposes of calculating AWW.
 {¶ 23} Furthermore, contrary to relator's argument, the commission is not required to find that her part-time employment automatically constitutes a "special circumstance" for purposes of the statute. Instead, in State ex rel. Logan v. Indus. Comm.
(1995), 72 Ohio St.3d 599, 601-602, the Supreme Court of Ohio has specifically held that "[w]hile part-time employment is not perse a `special circumstance,' in some part-time situations `special circumstances' may indeed exist." (Emphasis sic.) CitingState ex rel. Wireman v. Indus. Comm. (1990),49 Ohio St.3d 286.
 {¶ 24} Relator cites State ex rel. Riley v. Indus. Comm.
(1983), 9 Ohio App.3d 71, and argues that the commission was required to find her part-time employment constituted a "special circumstance." However, the magistrate finds that the facts inRiley differ significantly from the facts in the present case. In Riley, the employee had only been employed by the employer for three weeks prior to his injury and had been unemployed for the previous 49 weeks. The commission calculated the AWW using the standard 52 week period. Since the employee had no income for 49 of the 52 weeks, the commission set his AWW at $10.92. This court found that calculation was an abuse of discretion. In the present case, the commission specifically excluded relator's period of unemployment from the calculation.
 {¶ 25} Relator also contends that she testified at hearing that she had last been employed full time in 2001 and that she further testified that this job with the employer was the first available job she found. Relator wanted her prior full-time wages considered by the commission. The commission addressed this argument in its order by noting specifically:
* * * Although the injured worker argued at hearing that she worked full-time most of her work life, most recently for three years prior to being laid off in June, 2001, and that she made approximately $23,000.00 per year in this previous job, no documentation of wages has been submitted to support this contention. * * * Therefore, the Commission rejects the application of special circumstances in this case.
 {¶ 26} As the above language indicates, because the commission found that relator failed to present any evidence, separate from her testimony, regarding her earnings prior to her period of unemployment, the commission rejected the application of special circumstances. However, relator did present a W-2 earning summary indicating that she earned $13,754.83 in 2001. As such, contrary to the commission's order, there was some evidence presented, separate from relator's testimony, relating to her earnings prior to her period of unemployment. Without finding that this evidence requires the commission to find that special circumstances exist in the present case, this magistrate does find that the commission's order clearly misstates the evidence presented and that it constitutes an abuse of discretion.
 {¶ 27} Based on the foregoing, this magistrate finds that the commission did not abuse its discretion by omitting relator's period of unemployment in its entirety. However, the commission did abuse its discretion by concluding that special circumstances did not exist based solely upon a perceived lack of any evidence of relator's prior earnings other than her testimony. Because the commission misstated the facts, a limited writ should be granted ordering the commission to determine whether or not relator's prior earnings should be considered "special circumstances" warranting the use of an alternate method to calculate her AWW.